CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 10 2010

JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

ALLIANT AMMUNITION & POWDER CO., L.L.C., et al., )
)
    Plaintiffs, ) Civil Action No. 7:09-CV-00254
)
v. ) **MEMORANDUM OPINION**
)
LOCAL 8-00495 OF UNITED STEEL, PAPER & ) By: Hon. Glen E. Conrad
FORESTRY, RUBBER, MANUFACTURING, ENERGY, ) United States District Judge
ALLIED INDUSTRIAL & SERVICE WORKERS )
INTERNATIONAL UNION, AFL-CIO, et al., )
)
    Defendants. )

This action was filed pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, seeking to set aside and vacate an arbitrator's award. The matter is currently before the court on cross-motions for summary judgment. For the reasons stated below, the court denies the plaintiffs' motion for summary judgment, and grants in part and denies in part the defendants' motion for summary judgment.

I.    **Factual and Procedural Background**

This action was brought by Alliant Ammunition & Powder Co., L.L.C. and Alliant Techsystems, Inc. (collectively "Alliant" or the "Employer"), seeking to set aside and vacate an arbitrator's award following arbitration of a labor dispute between Alliant and the union representing certain of its employees at its Radford, Virginia plant. The defendants, Local 8-00495 of United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union, AFL-CIO, and United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union, AFL-CIO (collectively the "Union"), are

unincorporated labor unions. Also named as defendants are grievants Donna S. Ferguson, Teresa G. Gonzalez a/k/a Teresa G. Epperson, George H. Potter, Joshua M. Cozort, and Roger H. Wagner (collectively the "Grievants").

Alliant and the Union are parties to a collective bargaining agreement, effective October 7, 2007 (the "Agreement"). The Agreement provides formal grievance procedures for the resolution of disputes between the parties over "the meaning or application of the provisions of [the] Agreement...." (Art. V § 1.) This procedure culminates in arbitration and the Agreement provides that the "decision of the arbitrator shall be binding upon the parties..., provided that any such decision shall not extend, modify, or suspend any provision of [the] Agreement." (Art. V § 2-E).

The dispute between the parties, which culminated in the arbitration award now at issue in this case, arose when employee Donna Ferguson and four other similarly situated employees were called back to work on their regularly scheduled days off in September of 2007. Donna Ferguson was regularly scheduled to work Monday through Thursday, 10 hours a day, for a total of 40 hours per week. For the week beginning September 2, 2007 and ending September 8, 2007, Labor Day fell on Monday, one of Ferguson's regularly scheduled work days. Because both Labor Day and the Tuesday after Labor Day are recognized holidays under the Agreement, both days were paid holidays. During that week, Ferguson was given approximately 24 hours notice that she would need to work on her regularly scheduled days off, Friday and Saturday.

Prior to Friday, Ferguson accumulated 35 hours during her normally scheduled workweek: 8 holiday hours on Monday, 8 holiday hours on Tuesday, 8.5 hours worked on Wednesday, and 10.5 hours worked on Thursday. Ferguson also worked 10.5 hours on Friday and 2 hours on Saturday. Ferguson therefore worked a total of 47.5 hours.

Alliant paid Ferguson straight-time for the first 40 hours, and then paid the overtime rate for the remaining 7.5 hours. The Union contended that, under the Agreement, Ferguson should have received overtime pay for all hours worked in excess of the 35 hours worked during her regularly scheduled workweek, Monday through Thursday. The pertinent portions of the Agreement are as follows:

> **ARTICLE VIII - HOURS OF WORK AND OVERTIME**
> **Section 2.** All hours worked in excess of the assigned workweek and all hours worked in excess of the assigned work shift will be used for the purpose of computing overtime. An employee's regularly assigned work shift will be used for the purpose of computing overtime. An employee's regularly assigned workweek will average at least (40) hours per week over a two week period....
>
> ...
>
> The workweek shall start at 12:00 a.m. each Sunday morning and end at 12:00 midnight the following Saturday night.
> The Company and the Union by mutual agreement shall have the right to make changes to the workweek starting and stopping times without additional premium pay. Any such workweek mutually agreed to may not begin prior to 11:00 p.m. each Saturday.
> **Section 3.** Time and one-half the regular hourly rate ... shall be paid for all hours worked in excess of the assigned work week and all hours worked in excess of the assigned work shift or any hours after (40) except that work which is performed on the seventh consecutive day worked within the regular workweek shall be paid for at the rate of double the regular hourly rate. Only calendar days on which an employee actually works in excess of two (2) hours will be counted toward determination of the seventh day of work within the workweek. Neither time and one-half nor double time shall be paid more than once for the same hours worked, and in no case shall both time and one-half and double time be paid for the same hours worked, except as may be required in Article XII, "Holidays"....
>
> ...
>
> **Section 5.** Whenever an employee responds to an emergency call-in, he or she will be given a premium of four (4) hours' pay in addition to pay for the hours actually worked during the call-in. The rules governing call-in time are as follows:
> (A) An emergency call-in is defined as the calling back to work of an employee outside his or her regularly scheduled hours of work or on a holiday.
> (B) Call-in time will not be paid if notice that work is to be done outside of regular hours is given at least fifteen and three-quarter (15-3/4) hours before such work starts.
>
> ...
>
> (E) Call-in time allowed under these emergency provisions will not be treated as time worked for the purpose of computing overtime.
>
> ...

**ARTICLE XII - HOLIDAYS**
**Section 1.** The following days will be recognized as holidays...
   Labor Day
   Tuesday after Labor Day
...
**Section 3.** An employee who does not work on a holiday shall receive eight (8) hours of straight-time pay at his or her base rate.... If the holiday falls on a regularly scheduled work day, the employee can at his/her option, receive straight time holiday pay for all hours he/she would normally have been scheduled to work and have any additional hours above eight (8) be discounted from a subsequent holiday that falls on a day that the employee would not have been regularly scheduled to work....
**Section 4.** ...
When an employee receives pay for hours not worked on a holiday which occurs on a day he or she would otherwise have been scheduled to work his/her normal regularly scheduled hours shall be counted as hours worked for the purpose of computing weekly overtime....

After having followed the grievance procedures as outlined by the Agreement, the parties submitted the issue of overtime pay to an arbitrator. On December 11, 2008, arbitrator Gregg Lowell McCurdy conducted a hearing at which both parties appeared. In addition to representing Ferguson at the hearing, the Union also represented the four other similarly situated employees, though these individuals did not appear at the hearing.

At the hearing, the Union argued that an employee need not work 40 hours in order to receive overtime pay, relying on Article VIII, Section 2. The Employer argued that the Agreement did not contemplate overtime for hours worked outside the normal work schedule, relying both on the emergency call-in provisions and its past practice of not paying overtime for hours worked outside the regularly scheduled shift days.

On March 27, 2009, the arbitrator issued an Opinion and Award. He ruled that the wording of Article VIII, Section 2 "can *only* mean that the work on days other than those belonging to the regularly assigned work week are to be paid at the [overtime] rate" because "[t]o interpret the language otherwise would be to render the language completely meaningless with regard to the hours

4

worked on non-regularly scheduled work days." With respect to Section 5,[1] the emergency call-in provision, the arbitrator stated that it is "applicable only to 'emergency' situations - that is, situations that are not foreseeable which require employees to put in extra hours, more or less without warning...." Finally, the arbitrator held that Alliant's past practice argument was unavailing given that the contract language was not ambiguous. The arbitrator therefore sustained the grievance, and awarded overtime pay for the "hours worked outside [the Grievants'] regularly scheduled shift days but which are not in excess of 40 hours."

Alliant filed a motion for reconsideration, and on April 14, 2009, the arbitrator issued a Memorandum and Order, granting in part and denying in part Alliant's motion. The arbitrator acknowledged that he went beyond the Agreement's specific definition of what constitutes an "emergency call-in" in his prior decision, and therefore struck in error his analysis of Section 5 in the prior opinion. Nevertheless, he denied the remainder of Alliant's motion for reconsideration because "the consideration of first importance to a finding of wage liability by [Alliant] was premised upon Article VIII, §§ 2 and 3."

Alliant filed a second motion for reconsideration, and on May 14, 2009, the arbitrator issued another Memorandum and Order. In it, he denied the second motion for reconsideration because "[t]he more specific language of the Collective Bargaining Agreement, Article VIII §§ 2 and 3, takes precedence over the more general emergency call-in authority granted to the Employer by the CBA. The emergency call-in provision does not specifically address the core issue raised in this arbitration, whereas Article VIII, §§ 2 and 3 do so."

---

[1] The arbitrator erroneously referred to the emergency call-in provision as Section 6 in his first opinion.

5

In its complaint before this court, Alliant asserts that the arbitrator exceeded his authority and that his award should be set aside. The defendants filed a counterclaim seeking to enforce the award, and subsequently both sides filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. The parties fully briefed the issues before appearing before the court for a hearing on these motions on January 25, 2010. The matter is now ripe for disposition.

**II.    Discussion**

A district court's review of an arbitrator's award is extremely limited. United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 596-97 (1960); U.S. Postal Serv. v. Am. Postal Workers Union, 204 F.3d 523, 527 (4th Cir. 2000). A district court must "determine only whether the arbitrator did his job – not whether he did it well, correctly, or reasonably, but simply whether he did it." Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union, 76 F.3d 606, 608 (4th Cir. 1996). In United Paperworkers Int'l Union v. Misco, Inc., the United States Supreme Court established parameters for district court review of arbitrators' awards:

> The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.... As the Court has said, the arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced that he committed serious error does not suffice to overturn his decision.

484 U.S. 29, 38 (1987) (internal citations omitted).

Although a district court's review is thus limited, arbitration awards may be overturned if the award fails to draw its essence from the collective bargaining agreement. Enter. Wheel & Car Corp., 363 U.S. at 597; Mountaineer Gas Co., 76 F.3d at 608. Although a reviewing court may disagree with the arbitrator's interpretation of a contract, an arbitrator's judgment is not to be disturbed if he

6

"even arguably constru[e]d or appl[ied] the contract." Upshur Coals Corp. v. United Mine Workers of Am., 933 F.2d 225, 229-30 (4th Cir. 1991). However, where the arbitrator "fails to discuss critical contract terminology, which terminology might reasonably require an opposite result, the award cannot be considered to draw its essence from the contract." Cannelton Indus., Inc. v. District 17, United Mine Workers of Am., 951 F.2d 591, 594 (4th Cir. 1991).

In the case before the court, Alliant argues that the arbitrator's award failed to draw its essence from the Agreement because he ignored the plain language of Section 5. Alliant argues that Section 5 represents the bargained for compensation for employees who are called back to work. That is, because an employee who is called back to work may earn a four-hour bonus under Section 5, that employee is not entitled to receive premium pay for the hours actually worked simply by virtue of being called back to work. In requiring overtime pay for all hours worked when called in outside of a regularly scheduled shift, Alliant argues, the arbitrator ignored the plain language of the Agreement.

As the Union points out, however, Section 5 does not address whether the hours actually worked during an emergency call-in will be payed at a premium rate. Rather, Section 5 simply addresses the circumstances under which an employee will receive a bonus, which is the equivalent of four hours' pay. Such a bonus is paid only if the employee is not given the specified notice prior to a call-in. It is undisputed that the Grievants received adequate notice and that they were not entitled to the four-hour bonus under Section 5.

The arbitrator therefore concluded that Section 5 did not specifically address the issues before him. Rather, he concluded that the unambiguous language of Section 2 meant that "work on days other than those belonging to the regularly assigned work week are to [be] paid at the [overtime]

7

rate." He stated in his subsequent opinion that "the consideration of first importance to a finding of wage liability by [Alliant] was premised upon Article VIII, §§ 2 and 3." He clarified further in his third opinion that Section 5 "does not specifically address the core issue raised in this arbitration, whereas Article VIII, §§ 2 and 3 do so." Far from ignoring Section 5, the arbitrator instead concluded that it did not control and that the plain language of Sections 2 and 3 required the payment of overtime for "hours worked outside their regularly scheduled shift days."

With respect to Sections 2 and 3, Alliant also argues that the arbitrator ignored the plain language of the contract by conflating the terms "in excess of" and "outside of" as used in the Agreement. These terms are not defined in the Agreement. Alliant argues, however, that the phrase "in excess of the assigned workweek," as used in Sections 2 and 3, implicitly requires an employee to meet his or her weekly hour requirements— in this case, 40 hours— before he or she can receive overtime pay. Alliant contends that the phrase "outside of regular hours," as used in Section 5, contains no implicit requirement that an employee fulfill his or her weekly hours.

This interpretation of the Agreement is premised upon the employee's assigned workweek being defined in terms of total hours. The Agreement between the parties, however, does not define an employee's workweek in terms of hours, nor does it define "assigned workweek." In fact, the generic definition of the workweek found in the Agreement is stated in terms of calendar days. (Art VIII, Sec. 2) ("The workweek shall start at 12:00 a.m. each Sunday morning and end at 12:00 midnight the following Saturday night."). In holding that Section 2 requires overtime pay for work on days other than those belonging to the regularly assigned workweek, the arbitrator interpreted assigned workweek in terms of calendar days. It is not the role of this court to supplant an arbitrator's interpretation of a collective bargaining agreement with its own where the arbitrator was acting within the scope of his authority. Upshur Coals Corp., 933 F.2d at 229-30.

8

In support of its positions, Alliant argued before the arbitrator, and argues now before this court, that it had a past practice of not paying overtime for hours worked outside the employee's regular schedule when the employee had not met his or her weekly hour requirements. The United States Court of Appeals for the Fourth Circuit has recognized that, "[i]f the parties' written agreement is ambiguous or silent regarding the parties' intent, the arbitrator may use past practices and bargaining history to 'fill a gap' in the written contract." CSX Transp., Inc. v. United Transp. Union, 29 F.3d 931, 936 (4th Cir. 1994). In this case, the arbitrator reasoned that, because the language of the Agreement was not ambiguous, Alliant's past practice would not be used to vary the explicit language of the Agreement.

Alliant counters that, even if the contract does not contain facially contradictory language, the interplay of Section 2 and Section 5 nonetheless creates an ambiguity. Stated differently, if the policy behind Section 5 is to provide for a four-hour bonus rather than overtime pay during call-in periods, then an ambiguity exists between Section 5 and Section 2, regardless of whether the two sections are facially compatible. Alliant suggests that the arbitrator misunderstood or ignored this argument, and that as a result, he impermissibly ignored the evidence of past practice.

The court acknowledges that it is unclear from the arbitrator's opinions exactly how he interpreted Section 5. As described, the arbitrator's initial analysis of Section 5 was later stricken in error, and further analysis in subsequent opinions was limited. Alliant points to the lack of consistency with regard to Section 5 as evidence that the arbitrator misunderstood its arguments and the import of this section. An arbitrator's opinion, however, need not be internally consistent or even free of ambiguity. In fact, "[a]rbitrators have no obligation to the court to give their reasons for an award." Enter. Wheel & Car Corp., 363 U.S. at 598; see also Exxon Shipping Co. v. Exxon Seaman's Union, 73 F.3d 1287, 1297 (3rd Cir. 1996) (stating that "an arbitrator's decision need be

9

neither wise nor internally consistent" and that "arbitrators have no obligation to explain their reasons for an award or even to write an opinion unless the contract so requires"). That the arbitrator failed to discuss every facet of Alliant's position does not alter the fact that the arbitrator construed and applied the Agreement before him.

In sum, it is the court's conclusion that the arbitrator did not exceed the scope of his authority under the Agreement. He did not ignore the plain language of the agreement. He instead provided a rationale for his decision, including citation to specific provisions of the Agreement upon which he relied. He determined that Section 5 was inapplicable to the situation before him, and that Sections 2 and 3 were unambiguous and required overtime pay for all hours worked on days other than those belonging to an employee's regularly assigned workweek. Although this court may have reached a different conclusion, because the arbitrator arguably construed or applied the Agreement within the scope of his authority, the court cannot vacate his award. See Misco, Inc., 484 U.S. at 38; Mountaineer Gas Co., 76 F.3d at 608; Upshur Coals Corp., 933 F.2d at 229-30.

### III. Attorneys' Fees and Interest

The Union counterclaimed seeking enforcement of the arbitration award and attorneys' fees and prejudgment interest. For the reasons stated above, the court will enter an order enforcing the arbitrator's award in this case. Attorneys' fees, however, are only appropriate against a party who, without justification, refuses to abide by an arbitrator's award. United Food & Comm. Workers, Local 400 v. Marval Poultry Co., 876 F.2d 346, 350 (4th Cir. 1989). The Fourth Circuit has stated that, where a challenge goes to whether an arbitration award draws its essence from the contract, such challenge is considered sufficiently justified "unless there is literally no reasonably arguable legal support for [it]." Id. at 350. The court concludes that Alliant's challenges to the award based on its failure to draw its essence from the Agreement were sufficiently justified. Accordingly, the court will deny the Union's request for attorneys' fees.

An award of prejudgment interest is within the discretion of the court. Moore Bros. Co. v. Brown & Root, Inc., 207 F.3d 717, 727 (4th Cir. 2000). The court "must weigh the equities in a particular case to determine whether an award of prejudgment interest is appropriate." Id. The Union argues that prejudgment interest should be awarded in this case to emphasize the public policy in favor of labor arbitrations as a final means of resolving labor disputes. This reasoning alone, however, is insufficient to support an award of prejudgment interest "because it can be used any time an employer seeks review of an arbitration award ... but is unsuccessful." Chrysler Motors Corp. v. Int'l Union, Allied Indus. Workers of Am., 959 F.2d 685, 689 (7th Cir. 1992); see also Oil, Chemical & Atomic Workers Int'l Union v. Am. Cyanamid Co., 546 F.2d 1144, 1144 (5th Cir. 1977). The Agreement in this case did not provide for prejudgment interest in this situation and, once again, the court concludes that the Employer's challenge is not without merit or foundation. For the reason stated above, the court will also deny the Union's request for prejudgment interest.

## IV. Conclusion

For the foregoing reasons, the court concludes that the arbitrator did not exceed the scope of his authority, and therefore enforces the arbitrator's award. The Union's request for attorneys' fees and prejudgment interest is denied.

The Clerk is directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

**ENTER**: This 16th day of February, 2010.

United States District Judge

11